UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>THE DIOCESE OF CAMDEN, NEW JERSEY,<br><br>            Debtor. | Case No. 20-21257 (JNP)<br><br>Chapter 11 |
| CENTURY INDEMNITY COMPANY, AS SUCCESSOR TO CCI INSURANCE COMPANY, AS SUCCESSOR TO INSURANCE COMPANY NORTH AMERICA, et al.,<br><br>            Plaintiffs,<br><br>v.<br><br>THE DIOCESE OF CAMDEN, NEW JERSEY,<br><br>            Defendant. | Adv. Pro. No. 22-01123<br><br>Judge: Jerrold N. Poslusny, Jr. |

## MEMORANDUM DECISION

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

The Diocese of Camden, New Jersey (the "Debtor") filed a motion to dismiss (the "Motion") the first and second counts of the amended complaint (the "Amended Complaint," Dkt. No. 47) filed by certain underwriters at Lloyd's, London and Certain London Market Companies ("LMI"), Interstate Fire and Casualty Company ("Interstate"), and Century Indemnity Company ("Century," and with LMI and Interstate, the "Insurers"). For the reasons discussed below, the Motion is granted.

### Jurisdiction

This Court has jurisdiction under 28 U.S.C. §§ 157(b)(1) and 1334(b). Venue is proper in this Court under 28 U.S.C. § 1408. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

### Background

The following facts are alleged in the Amended Complaint and are presumed true for the purposes of the Motion. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). After multiple sessions of court ordered mediation, the Debtor and the Insurers entered into the "Insurance Settlement." The Insurance Settlement provided for the Insurers to contribute funds to a post-confirmation trust to be formed pursuant to a plan of reorganization in exchange for releases, injunctions, and a buy-back of insurance policies (the "Policies") held by the Debtor. Am. Complt. ¶ 3. The releases were to include claims filed by tort claimants (the "Survivor Claims"). See Case No. 20-21257 ("Main Case") Dkt. No. 1087.

The terms of the Insurance Settlement required the Debtor to (1) "seek entry of the Confirmation Order" and the "Confirmation Findings and Conclusions;" and (2) "cooperate as necessary or appropriate to effect the objectives of the [Insurance Settlement]." Am. Complt. ¶ 34. Additionally, as a condition precedent to the Insurers' obligations, the Insurance Settlement required the Debtor to file a plan consistent with the Insurance Settlement. Id. ¶ 35. The Insurers had the right to terminate the Insurance Settlement if the Debtor did not do so. Id. The specific findings and conclusions the Insurance Settlement required the Debtor to seek, among others, were that:

> (1) this [Insurance Settlement] is the result of long-term negotiations amongst the [Insurers and Debtor]; (2) the Settlement Amount provides good and valuable consideration to [the] bankruptcy estate, and enables distributions to the [Survivors] . . .; (3) this [Insurance Settlement] is therefore necessary to the Plan

> because it provides significant funding for the Plan . . .; (4) the Settlement Amount is necessary to the success of [Debtor's] reorganization.

Id. ¶ 36 (quoting Insurance Settlement § 1.ii.). Finally, the Insurance Settlement could only be terminated by: (1) mutual assent; or (2) the Insurers upon thirty-days' notice. Id. ¶ 37.

On January 5, 2022, the Debtor filed a motion (the "Insurance Motion") seeking approval of the Insurance Settlement. Id. ¶ 39, see also Main Case Dkt. No. 1144. The Official Committee of Tort Claimant Creditors (the "Committee") opposed the Insurance Motion, and on January 18, 2022, all parties engaged in further mediation in an effort to negotiate a global settlement. Am. Complt. ¶ 6. The Debtor filed several plans of reorganization, which incorporated the Insurance Settlement, while it continued to engage in negotiations with the Committee. Id. ¶ 8. A trial date of April 6, 2022, was set to consider the Insurance Motion, which was later adjourned to April 19, 2022. Main Case Dkt. Nos. 1219, 1360.

On April 11, 2022, the Debtor reached a partial agreement with the Committee, and continued to negotiate what became the "Committee Settlement," the terms of which were mutually exclusive of the Insurance Settlement's terms. Am. Complt. ¶ 9. See also In re Diocese of Camden, New Jersey, 653 B.R. 309, 327-31 (Bankr. D.N.J. 2023) ("Diocese I").

The Debtor's counsel stated during a hearing that the Debtor would withdraw the Insurance Motion. Am. Complt. ¶ 10. The Debtor filed an amended plan, which, after several additional amendments, became the eighth amended plan, (the "Plan"). The Plan incorporated the Committee Settlement and its accompanying documents but not the Insurance Settlement. Id. ¶ 11. See also Diocese I, 653 B.R. at 327. However, the Debtor did not withdraw the Insurance Motion. Instead, a joint trial (the "Trial") was scheduled for the Court to hear both matters. Diocese I, 653 B.R. at 331. All parties engaged in discovery, with multiple objections to requests and motions to compel being filed on both sides, including the Debtor objecting to several of the Insurers' discovery requests and attempts to depose certain of Debtor's representatives. Am.

3

Complt. ¶ 57. At the Joint Trial, the Debtor objected to the Insurers presenting certain evidence and witnesses and cross examined certain of the Insurers' witnesses related to the Insurance Settlement. Id. ¶ 63. The Debtor also filed objections to the approval of the Insurance Settlement. Id. The Court eventually confirmed the Plan and denied approval of the Insurance Settlement. In re Diocese of Camden, New Jersey, 653 B.R. 722 (Bankr. D.N.J. 2023) ("Diocese II"). The decision denying approval of the Insurance Settlement noted that Insurers failed to establish the value of the Survivor Claims, and as such, had failed to establish that the Insurers' contributions were fair and equitable payment for the Policies. Id. at 740.

The initial complaint alleged the Debtor breached the Insurance Settlement and sought specific performance, damages for breach of contract, a declaration that such damages are an administrative expense, and a claim for substantial contribution under section 503(b) of Title 11 of the United States Code (the "Bankruptcy Code"). Dkt. No. 1. The first three counts of that complaint were dismissed (the "Previous Decision"), the second and third without prejudice to the Insurers amending the complaint, but the claim for substantial contribution was allowed to proceed. The Insurers then filed the Amended Complaint, which contains causes of action for (1) breach of contract; (2) declaratory judgment that any damages are an administrative expense; and (3) substantial contribution under section 503(b) of the Bankruptcy Code. See Am. Complt. According to the Amended Complaint, the Debtor breached the Insurance Settlement by failing to pursue confirmation of "'a plan . . . containing all provisions' specified in the [Insurance Settlement], and 'no provision that is contrary to or inconsistent with' the [Insurance Settlement].'" Id. ¶ 7. Further, the Amended Complaint alleges that the Debtor actively opposed approval of the Insurance Settlement by: (1) filing an objection to its approval; (2) objecting to discovery requests and asserting privilege to oppose certain discovery requests; (3) objecting to the introduction of evidence including expert witness testimony; (4) failing to prepare witnesses

for the hearing on the Insurance Motion; and (5) cross-examining the Insurers' expert witness, Romy Comiter. Id. ¶¶ 56-64.

The Motion argues that, even assuming all of the allegations in the Amended Complaint are true, the Debtor's conduct was an appropriate exercise of its fiduciary duty to act in the best interests of the estate as described by the Third Circuit in In re Martin, 91 F.3d 389 (3d Cir. 1996). The Insurers' opposition (the "Opposition") argues that the Debtor's active opposition to the Insurance Motion went beyond the safe harbor described in Martin and constituted a breach of contract. Dkt. No. 58. The Debtor's reply essentially reiterates the arguments in the Motion. Dkt. No. 59.

## Discussion

### A. Rule 12(b)(6) Motion to Dismiss Standard

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012, the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. U.S. Bank Nat'l Ass'n v. Gerber, 380 F. Supp. 3d 429, 433 (M.D. Pa. 2018) (citing Fed. R. Civ. P. 12(b)(6)); In re Student Fin. Corp., 335 B.R. 539, 545 (D. Del. 2005). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Id. (citing Phillips, 515 F.3d at 233 (quoting Pinker, 292 F.3d at 374 n.7)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Id. (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192,

1196 (3d Cir. 1993))).[1] Further, the Court may also consider "documents in the non-moving party's possession or which the non-moving party knew of or relied on in drafting its complaint." In re Halpert & Co., Inc., 254 B.R. 104, 113 (Bankr. D.N.J. 1999).

In this case, the Amended Complaint cites to and relies heavily on testimony from the Trial, depositions and other discovery taken in advance of the Trial, as well statements made at other hearings and other documents filed on the docket of the Main Case. See generally Am. Complt. As a result, it is appropriate for the Court to consider those documents in their entirety, as well as the decisions from that Trial, in considering the Motion.

## B. Breach of Contract

The Insurance Settlement provides that New Jersey law governs disputes over the terms of the contract. Dkt. No. 45, 5:17-20. Under New Jersey law, a claim for breach of contract requires the plaintiff establish four elements:

> First [t]he parties entered into a contract containing certain terms; second, that "plaintiff[s] did what the contract required [them] to do"; third, that "defendant[s] did not do what the contract required [them] to do[,]" defined as a "breach of the contract"; and fourth, that "defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff[s]."

Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (quoting Model Jury Charge (Civil) § 4.10A "The Contract Claim-Generally" (May 1998)); Coyle v. Englander's, 199 N.J. Super. 212, 223 (App. Div. 1985). "Each element must be proven by a preponderance of the evidence." Id.

---

[1] A party may raise an affirmative defense in a motion to dismiss if it is apparent on the face of the complaint and no development of the record is required. Ahmed v. Wells Fargo Bank, NA, 432 F. Supp. 3d 556, 562 (E.D. Pa. 2020) (citing Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997) (applying rule to a res judicata defense but explaining it applies to all Rule 8(c) defenses)). The underlying rationale "is that the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated '[w]here the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" Id. (quoting Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)). Here, the Insurers have had notice of the applicability of Martin from the Trial and the Previous Decision, and the Amended Complaint relies heavily on the docket and events at Trial.

(citing Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 169 (2006) citing State v. Seven Thousand Dollars, 136 N.J. 223, 238 (1994)).

The primary dispute in this Motion is the same as it was in the Previous Decision - whether the Debtor's conduct falls within the safe harbor provided in Martin, 91 F.3d 389. In Martin, the Third Circuit considered a trustee's obligations when faced with "a conflict between her fiduciary duty to the creditor body as a whole and the alleged duty to go forward with a settlement agreement favoring one creditor but otherwise detrimental to the estate." Id. at 394. The debtors in Martin were involved in a state court breach of contract action over the sale of their house to a third-party buyer at the time they filed their petition. Id. at 391. The trustee filed a motion pursuant to Bankruptcy Rule 9019, seeking approval of a settlement she had entered into with the buyers providing for mutual releases of the parties based on the assumption that there was an open-ended trial date for the state court action, and the delay would be detrimental to the estate. Id. The debtors objected, arguing that they had requested and received an expedited trial date from the state court. Id. at 392. The trustee, upon learning of the expedited trial date, "'did not argue in favor of its . . . motion' to approve the stipulation" and when called to testify, stated that "although she believed the stipulation was in the best interest of the estate at the time she signed it, she would not have agreed to [it] had she known of the expedited trial date." Id. The state court ruled in the debtors' favor, awarding them $150,000. Id. The bankruptcy court denied the 9019 motion, and the buyers appealed, arguing the trustee had breached her duty of good faith and fair dealing by refusing to support her own motion. Id. at 393.

The Third Circuit ruled that, while the trustee was required to deal with the buyers with "honesty in fact in the conduct or transaction concerned and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract," she also had a "fiduciary relationship with all creditors of the estate." Id. at 393-94. The Third Circuit

emphasized the trustee's duty to maximize the value of the estate and found that, in certain circumstances, this duty creates a conflict with a duty she may owe to the counterparty of a contract. In those circumstances, the Third Circuit found that a trustee could be placed in a position of having to choose between conflicting legal obligations, and, in that situation, the bankruptcy court must bear responsibility. However, in order to make such a determination, a trustee has a duty to "apprise[ the court] of all relevant information that will enable it to determine what course of action will be in the best interest of the estate." Id. at 394. The court placed the duty on the trustee to "inform the court and the parties of any changed circumstances since the entry into the stipulation of settlement." Id. The court specifically rejected the proposition that a trustee is required to champion a motion to approve a stipulation that is no longer in the best interest of the estate. Id. Further, it approved of the trustee's handling of the matter, in which she did not withdraw the motion nor breach any terms of the contract but did not argue in favor of it and instead testified that she would not have entered into the agreement had she been aware of the opportunity for an immediate trial and verdict. Id. The court also noted that the decision addressed a "very narrow issue," and it would "not expand the matter beyond its perimeters." As a result, this Court must apply these principles in the context of this case, in which the Debtor allegedly took steps beyond what was specifically approved of by the Third Circuit in Martin.

As noted in the Previous Decision, the circumstances in this case are similar to those in Martin. The Debtor, acting as a trustee in this case, had an agreement with the Insurers, and had filed a motion seeking approval of that agreement when a more favorable arrangement became available. See Dkt. No. 45. Although the Insurers allege that the Debtor cannot point to any changed circumstances, this is not the case. Am. Complt. ¶¶ 53-55. Here, the Debtor agreed to the terms of the Insurance Settlement when there was no settlement offer on the table from the

Committee. However, after months of negotiations, of which the Court and the Insurers were aware and even involved in to at least some degree, the Committee made an offer of settlement the Debtor found preferable. Diocese I, 653 B.R. at 354. This is similar to Martin, where the trustee made an agreement with the buyer when she did not have a trial date set in the state court action, but later found that an expedited trial date made proceeding with the state court action preferable. Martin, 91 F.3d at 392. As such, the Court finds, as it did in the Previous Decision, that the Committee Settlement constitutes a change in circumstances and Martin is applicable.

The Amended Complaint alleges that the Debtor unilaterally repudiated the Insurance Settlement, threatened to withdraw the Insurance Settlement, and filed an incompatible plan in violation of the Insurance Settlement. Am. Complt. ¶¶ 44-49. The Insurers argue these asserted breaches distinguish this case from Martin, in which the trustee did not breach her agreement. However, the Previous Decision discussed these allegations and determined that requiring the Debtor to support a plan incorporating the Insurance Settlement which the Debtor did not believe was in the best interest of the estate directly conflicted with the Debtor's fiduciary duty to other creditors. Dkt. No. 45 at 12:8-14. As such, Martin applies, and the Debtor's failure to support the Insurance Settlement does not constitute a breach of contract for which the Insurers can recover damages. Id. The Third Circuit "specifically rejected the [I]nsurers' argument that the [D]ebtor was required to support and argue in favor of the [Insurance Settlement] in violation of its fiduciary duty to the Estate as a whole." Id. at 13:7-10. Therefore, the Debtor's failure to support the Insurance Settlement, and filing of an incompatible Plan, cannot be the basis of a breach of contract claim here. Similarly, the Previous Decision found that the Debtor's announcement that it would withdraw the Insurance Settlement was not actionable because the Debtor ultimately did not withdraw the Insurance Settlement. Id. at 12:15-19. Had the Court approved the Insurance Settlement, the Debtor would have presumably moved forward and fulfilled its obligations.

The additional allegations in the Amended Complaint include that the Debtor argued against approval of the Insurance Settlement, see Dkt. Nos. 2480, 3074, and cross examined the Insurers' expert witness, Rory Comiter. Am. Complt. ¶ 63. The Insurers allege that this conduct destroyed their right to the fruits of the Insurance Settlement. However, Martin provides that a trustee has a duty to apprise the Court of "all relevant information that will enable it to determine what course of action will be in the best interest of the estate." Martin, 91 F.3d at 394. Under some circumstances, for example, where the trustee feels that direct testimony does not give the court all relevant information, or indeed, provides misleading information, it may be necessary for a trustee to cross-examine a witness in order to fulfill his or her fiduciary obligations under Martin. See id. Similarly, a trustee may be required to file responses, including objections, to settlement motions, if she feels that there is additional, or clarifying information the court should consider to "determine what course of action will be in the best interest of the estate." Id.

The Amended Complaint alleges the Debtor cross-examined the Insurers' expert witness regarding the reasonableness of the Insurance Settlement, the findings in her report, and her reliance on another witness's claim valuation in her report. Am. Complt. ¶ 66 (quoting Oct. 11, 2022, Trial Transcript). Additionally, it alleges the Debtor's filings contained arguments against approval of the Insurance Settlement. Id. ¶ 63 (citing Main Case Dkt. Nos. 2480, 3074). Assuming these allegations are true, the Court concludes that the Debtor provided detailed information to allow the Court to determine what was in the best interest of the estate. The transcripts cited by the Insurers show there was a significant amount of conflicting testimony regarding the value of the Policies. See id., Oct. 11, 2022, Trial Transcript. The value of the Policies was derived from the value of multiple personal injury actions, all of which were unliquidated at the time of the hearing. Diocese II, 653 B.R. at 735. Based on the parameters laid out in Martin, the Court concludes that the Debtor's actions were appropriate to ensure the Court

had all relevant information to make its determination, particularly given the fact that the value of the assets being sold in the Insurance Motion was not readily ascertainable and was heavily disputed.

Additionally, the Amended Complaint alleges that the Debtor filed objections to and asserted privilege in response to discovery requests made by the Insurers related to consideration of the Insurance Settlement. Am. Complt. ¶ 60. However, the Court has already ruled several times that none of the discovery disputes by either party were improper, and this Court will not find that asserting a privilege constitutes a breach of contract. Therefore, these allegations do not constitute a claim for breach of contract under Martin.

The remaining allegations in the Amended Complaint are also insufficient to establish a breach of contract under Martin. The Amended Complaint alleges the Debtor objected to the introduction of evidence including witness declarations and failed to prepare witnesses for the hearing. Am. Complt. ¶¶ 61-62. However, for the same reasons already discussed, a trustee objecting to evidence is not improper because the trustee has a duty to ensure the court has the necessary information to decide the best interest of the estate. Indeed, Martin specifically states that a trustee is not required to support a settlement that he or she does not believe is in the best interest of the estate, and so the court cannot require a trustee to prepare witnesses in support of such a settlement, or bar a trustee from objecting to evidence that she believes is inaccurate or misleading.

## Conclusion

A debtor in possession has a duty under Martin to apprise the court of all relevant information regarding potential settlements. At times, this may require a debtor to cross-examine witnesses, or to file responses including objections to settlement it has made, to ensure the court is aware that changed circumstances may make another offer more beneficial to the estate. This

11

is because a debtor in possession has a fiduciary duty, not only to counterparties to agreements, but to all creditors and the estate as a whole. As a result, the allegations of the Debtor's conduct in the Amended Complaint do not constitute a breach of contract under Martin. The Motion is granted and counts 1 and 2 of the Amended Complaint are dismissed without prejudice to the Insurers filing a further amendment within thirty days. The case may alternatively move forward based on the remaining count.

Dated: December 30, 2024

                                            JERROLD N. POSLUSNY, JR.
                                            U.S. BANKRUPTCY COURT JUDGE